Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Julie Friedman*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Julie Friedman,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Liberty Life Assurance Company of Boston; Farmers Group, Inc.; Farmers Group, Inc. Disability Plan,<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Julie Friedman (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.　Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover

-1-

1 employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Farmers Group, Inc. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy which was fully insured by Liberty Life Assurance Company of Boston (hereinafter referred to as "Liberty Mutual"). The specific Liberty Mutual group disability policy is known as Group Policy No.: GF3-860-004094-01 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Liberty Mutual policy was to provide disability insurance for its employees. Upon information and belief, the Liberty Mutual policy may have been included in and part of an employee benefit plan, which may have been named the Farmers Group, Inc. Disability Plan (hereinafter referred to as the "Plan") and was created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Liberty Mutual functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Liberty Mutual.

5. Upon information and belief, Plaintiff believes Liberty Mutual operated under a conflict of interest in evaluating her long term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as

well as the payor of benefits; *to wit*, Liberty Mutual's conflict existed in that if it found Plaintiff was disabled, it was then liable for payment of her disability benefits. When Liberty Mutual denied Plaintiff's disability claim, it saved a significant sum of money.

6. The Company, Liberty Mutual and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

*Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about March 4, 2011 due to serious medical conditions and was unable to work in her designated occupation as a Claims Supervisor- Property. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to work in any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for short term disability benefits which were approved, paid and have been exhausted. Plaintiff then filed for long term

disability benefits under the relevant policy which was administered by Liberty Mutual, meaning it made the decision with regard to whether Plaintiff was disabled.

11. Upon information and belief, the relevant Liberty Mutual policy and definition of disability governing Plaintiff's long term disability claim is as follows:

"Disability" or "Disabled" means:

1. For persons other than pilots, co-pilots, and crew of an aircraft:

i. If the Covered Person is eligible for the 24 Month Own Occupation Benefit, "Disability" or "Disabled" means during the Elimination Period and the next 24 months of Disability the Covered Person is unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness; and

ii. After 24 months of benefits have been paid, the Covered Person is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

12. Liberty Mutual approved Plaintiff's long term disability claim and paid Plaintiff long term disability benefits from September 2, 2011 through April 24, 2014.

13. During the period of time Plaintiff was receiving long term disability benefits, her claim for Social Security disability benefits was also approved. Plaintiff is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

14. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of March 3, 2011.

15. On April 22, 2013, Liberty Mutual retained David C. Marzulo, D.O., a board certified neurologist, to perform an Independent Medical Examination. After examination and review of Plaintiff's medical records, Dr. Marzulo opined Plaintiff "would have

difficulty sustaining a full time work day." Following the examination, Liberty Mutual continued to pay Plaintiff's claim.

16. Plaintiff informed Liberty Mutual her claim for Social Security disability benefits had been approved and submitted to Liberty Mutual a copy of her June 28, 2013 Notice of Decision – Fully Favorable and July 6, 2013 Notice of Award.

17. The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the Liberty Mutual policy for the first 24 months of disability and substantially similar to the policy's definition of disability after the first 24 months of disability. Therefore, the SSA's approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to the lawfulness of Liberty Mutual's decision to terminate Plaintiff's benefits.

18. In a letter dated July 25, 2013, Liberty Mutual informed Plaintiff she had an overpayment of $36,642.17 on her long term disability claim, due to her SSA approval and receipt of SSA disability benefits.

19. In good faith, with a check dated August 26, 2013, Plaintiff paid the overpayment to Liberty Mutual, in full.

20. In a letter dated April 24, 2014, Liberty Mutual notified Plaintiff it was terminating her long term disability benefits beyond that date, as it determined she was capable of returning to work.

21. As part of its review of Plaintiff's claim for long term disability benefits, Liberty Mutual obtained a medical records only "paper review" of Plaintiff's claim from Philippe Chemaly, Jr., D.O. Dr. Chemaly was asked three times to review Plaintiff's claim and on the first two occasions he set forth limitations that precluded any full time work. On his third review which occurred only a week after his second review, Dr. Chemaly reviewed

1 the same evidence and suddenly changed his mind to opine that Plaintiff could engage in sedentary work.

22. Upon information and belief, Plaintiff believes Dr. Chemaly may be a long time medical consultant for the disability insurance industry and Liberty Mutual. As a result, Plaintiff believes Dr. Chemaly may have an incentive to protect his own consulting relationship with the disability insurance industry and Liberty Mutual by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the termination of Plaintiff's long term disability benefits.

23. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the April 24, 2014 termination of her long term disability benefits and in support of her appeal, Plaintiff submitted additional medical evidence demonstrating she met any definition of disability set forth in the relevant Liberty Mutual policy.

24. Plaintiff submitted to Liberty Mutual a May 7, 2014 medical record from her treating board certified neurosurgeon, who opined, "I reviewed the peer review and surv. tape and do not agree with findings and feel she is unemployable secondary to chronic neck and back pain, need for more L surgery, severe myelopathy."

25. In a letter dated July 3, 2014, Liberty Mutual notified Plaintiff it had denied her claim for long term disability benefits under the policy. Liberty Mutual informed Plaintiff in its July 3, 2014 letter she had exhausted all administrative levels of appeal and could file a civil action lawsuit.

26. Prior to rendering its July 3, 2014 final denial, Liberty Mutual's own Managed Disability Services Unit reviewed her claim. Plaintiff questions the independence, impartiality and bias of the Managed Disability Services Unit to fully and fairly review her

-6-

claim and she believes the review was adversarial to Plaintiff's claim because it was conducted by a Liberty Mutual employee. Plaintiff believes Liberty Mutual's financial conflict of interest may be a motivating factor why it referred Plaintiff's claim to its own Managed Disability Services Unit for review.

27. Prior to rendering its July 3, 2014 final denial, Liberty Mutual never shared with Plaintiff any of the peer review reports or notified Plaintiff what she needed to do to perfect her claim. Liberty Mutual's failure to provide Plaintiff with the opportunity to respond to the peer reports and/or to perfect her claim precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

28. In evaluating Plaintiff's claim on appeal, Liberty Mutual had an obligation pursuant to ERISA to administer Plaintiff's claims "solely in her best interests and other participants" which it failed to do. [1]

29. Liberty Mutual failed to adequately investigate Plaintiff's claim and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Liberty Mutual's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claims is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

30. Plaintiff believes Liberty Mutual provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claim including obtaining a proper vocational evaluation interviewing Plaintiff in order to determine whether she was actually able to return to part-time or full-time work; providing a one sided review of Plaintiff's claim that failed to consider all evidence submitted by her and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to adequately consider Plaintiff's Social Security disability approval and continued receipt of benefits; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

31. Plaintiff further believes the reason Liberty Mutual provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Liberty Mutual undertook as decision maker and payor of benefits which created an inherent conflict of interest and provided a financial incentive for it to the deny the claim.

32. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Liberty Mutual and any individual who reviewed her claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest which may have influenced Liberty Mutual's decision to deny her

claim as well as consider extrinsic evidence related to Liberty Mutual's ERISA procedural violations.

33. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review Liberty Mutual's decision as well as the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Liberty Mutual as referenced herein are so flagrant they justify *de novo* review, or at a minimum, the highest judicial scrutiny.

34. As a direct result of Liberty Mutual's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

35. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

36. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff her long term disability benefits and any other employee benefits she may be entitled to as a result of being found

1 disabled pursuant to the Liberty Mutual policy from the date she was first denied these
2 benefits through the date of judgment and prejudgment interest thereon;

3       B.      For an Order directing Defendants to continue paying Plaintiff the
4 aforementioned benefits until such time as she meets the conditions for termination of
5 benefits;

6       C.      For attorney's fees and costs incurred as a result of prosecuting this suit
7 pursuant to 29 U.S.C. §1132(g); and

8       D.      For such other and further relief as the Court deems just and proper.

DATED this 27th day of January, 2015.

SCOTT E. DAVIS. P.C.

By:    */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff